STAR-KIST FOODS, INC. *v.* UNITED STATES, (BRUNO SCHEIDT, INC., PARTY IN INTEREST) (NO. 4912)[1]

United States Court of Customs and Patent Appeals, November 22, 1957

*Lamb & Lerch* (*J. G. Lerch* and *D. A. Golden* of counsel) for appellant.
*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

[Oral argument October 9, 1957, by Mr. Lerch and Mr. FitzGibbon]

Before JOHNSON, Chief Judge, and O'CONNELL, RICH, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1819, one judge dissenting, granting a motion by the Government to dismiss a protest by the appellant against the rate of duty assessed upon certain imported merchandise, consisting of tuna fish packed in brine, in airtight containers weighing with their contents, not over 15 pounds each. The protest purported to be filed under section 516 (b) of the Tariff Act of 1930, as amended, but in determining the issues presented it is also necessary to consider

---

[1] C. A. D. 666.

here paragraphs 718 (a) and 718 (b) of that Act. The pertinent statutory provisions are as follows:

Sec. 516 (b) *Classification.* The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary of the Treasury, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief.

\* \* \* \* \* \* \*

Paragraph 718 (a), Tariff Act of 1930.

Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem. (Note: At the time of the importation herein the rate of 30 per centum had been increased to 45 per centum under the provisions of Section 336 and Presidential Proclamation T. D. 46795.)

Paragraph 718 (b), Tariff Act of 1930.

Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances): Salmon, 25 per centum ad valorem; other fish, 25 per centum ad valorem. (Note: At the time of the importation herein the rate of 25 per centum had been reduced by the Trade Agreement with Iceland (T. D. 50956) to 12½ per centum.)

The testimony of record shows that appellant is an American manufacturer or producer engaged in the preparation of tuna fish which is packed in various types of oil or, alternatively, in distilled water, without oil. The majority of the Customs Court, noting the distinction between paragraphs 718 (a) and 718 (b), above quoted, held that since fish packed in brine was not classified under the same paragraph as fish packed in oil or in oil and other substances, the two could not be regarded as merchandise of the same class or kind within the meaning of section 516 (b), and accordingly appellant did not qualify under that section. No specific holding was made by the majority as to whether appellant's tuna fish packed in distilled water was of the same class or kind as the imported merchandise.

It is stated in the brief for the Government that:

The sole question presented therefore is one of fact and is whether the plaintiff, appellant, Star-Kist Foods, Inc., an American manufacturer, producer or wholesaler of tuna fish canned in oil, is a manufacturer, producer or wholesaler of the same class or kind of merchandise as that which is the subject matter of the importation herein, to wit, tuna fish canned in brine?

From the foregoing excerpt it is clear that the Government, like the majority of the Customs Court, is relying solely on the distinction between packing in oil and packing in brine; and it further appears from the record that at least the primary reason for such reliance, in each case, is that fish packed in oil is classified under the 1930 Tariff Act in a separate paragraph from fish packed in brine.

No doubt customs classification is a material factor in determining whether goods are of the same class or kind, within the meaning of section 516 (b), but we agree with the dissenting member of the Customs Court that the mere fact that the merchandise of an American manufacturer, producer or wholesaler is not classifiable under the same paragraph as the imported merchandise, is not, alone, sufficient to preclude him from filing a protest under that section.

It seems reasonable to assume that if Congress had intended classification under the same paragraph to be a condition precedent to the filing of a protest under section 516 (b), express language to that effect would have been included in that section, or at least that the words used to define the necessary relationship between the goods of the protestant and the imported merchandise would be those used in the Tariff Act where goods are to be classified under the same paragraph, namely, "such," "similar" or "like." The selection of the broader term "class or kind" in section 516 (b) appears to indicate an intention to permit a somewhat greater latitude than that of classification under the same paragraph.

As was pointed out in the dissenting opinion below, tariff classifications are of widely varying scope and substantial inequities might result if the right to file a protest under section 516 (b) were dependent solely on the breadth of the particular classification which happened to be involved. Moreover, it frequently happens that certain goods falling under a particular paragraph are more closely related to some goods which do not fall under that paragraph than to other goods which do. Thus, tuna fish packed in oil seems clearly to differ more widely from sardines packed in oil than from tuna fish packed in brine, but the former two both fall under paragraph 718 (a) while the latter falls under paragraph 718 (b). The principle relied on by the majority of the Customs Court would apparently give to a producer of sardines or anchovies packed in oil the right to protest against the duty on tuna fish packed in oil, but would deny that right to a producer of tuna fish packed in brine, and yet the commercial relationship between the two types of tuna fish is clearly closer than that between either of them and sardines or anchovies.

Finally, as was also pointed out by the dissenting judge below, classification of the imported merchandise may be the very point at issue in a protest under section 516 (b). If that classification also governs the right to file a protest, which classification is to be controlling, that assigned by the collector, that urged by the protestant, or that finally determined by the courts?

Most of the decisions relied on by the majority of the Customs Court relate to questions of classification and hence are not controlling

here. The case of *E. C. Miller Cedar Lumber Co.* v. *United States,* 24 C. C. P. A. (Customs) 272, T. D. 48701, involved a motion to dismiss a protest under section 516 (b), but the point involved was the propriety of the ground on which the protest was made, rather than to the qualification of the American manufacturer or producer to file any protest at all, which is the issue here. The *E. C. Miller* case, therefore, is not in point.

For the reasons given we are of the opinion that the question as to whether the goods of the protestant are of the same class or kind as the imported merchandise is one which must be determined on the basis of all the pertinent circumstances. Customs classification is one such circumstance but is not, alone, controlling.

In the instant case the testimony shows that wholesalers recognize a distinction between tuna fish packed in brine and that packed in oil, and place their orders accordingly, but that the two kinds are frequently "sold on the same markets and on the same shelves to the same consumers and for the same purpose." It seems evident, therefore, that any significant change in the price of one type of goods would probably have a material effect on sales of the other.

Under all the circumstances of this case we are of the opinion that the appellant's tuna fish packed in oil is merchandise of the same class or kind as the imported merchandise, within the meaning of section 516 (b) of the Tariff Act of 1930, and that appellant is therefore qualified to maintain its protest under that paragraph.

A further pertinent point noted in the dissenting opinion below is that the testimony shows that, in addition to tuna fish packed in oil, appellant also produces a so-called "dietetic pack" of tuna fish in which the only additive is distilled water. Such a pack would clearly be classifiable under paragraph 718 (b), under which paragraph the imported merchandise is classified, and accordingly the reasoning of the majority of the Customs Court with respect to appellant's tuna fish packed in oil would not be applicable. We conclude that appellant is entitled to maintain its protest on the basis of its tuna fish packed in distilled water, as well as that packed in oil.

The judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings not inconsistent with this opinion.

WORLEY, J., was not present at the argument of this appeal and did not participate in the decision.

JACKSON, J., Retired, recalled to participate.